IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES A. DOLL and AIMEE DOLL,   )
                                )
                Plaintiffs,     )
                                )
v.                              )   Case No. 06-2416-JWL
                                )
CHICAGO TITLE INSURANCE COMPANY,)
                                )
                Defendant.      )
                                )
                                )

## MEMORANDUM AND ORDER

In this diversity action, plaintiffs James and Aimee Doll, on behalf of themselves and numerous potential class members, have brought contract and tort claims against defendant Chicago Title Insurance Company (Chicago Title). Plaintiffs' claims are based on their allegation that Chicago Title, in acting as plaintiffs' closing agent in a real estate refinancing, collected and retained an amount for recording fees in excess of the actual fees paid by Chicago Title for recording plaintiffs' mortgage and release. Plaintiffs' motion for class certification is presently pending.

This matter presently comes before the Court on Chicago Title's motion for summary judgment (Doc. # 77). Chicago Title argues that plaintiffs' tort claims are barred by the applicable statutes of limitations, and that plaintiffs' recovery of damages is precluded by setoff relating to the amount Chicago Title undercharged plaintiffs for recording fees on a separate closing. For the reasons set forth below, the motion is

granted in part and denied in part. The Court agrees that plaintiffs' claims for unjust enrichment and money had and received are time-barred, and summary judgment is granted on those claims. The motion for summary judgment is denied in all other respects.

I.     **Facts**[1]

Since 1991, plaintiffs have owned and resided at a house in Westwood, Johnson County, Kansas. When plaintiffs refinanced their mortgage in 2002, Chicago Title acted as the settlement agent, with the closing occurring on January 24, 2002. The HUD-1 settlement statement prepared by Chicago Title for the closing indicated recording fees of $35.00 for the mortgage and $10.00 for the release, and those amounts were paid by plaintiffs to Chicago Title. Plaintiffs retained copies of the mortgage and release that were to be recorded. Plaintiffs knew that these documents would be recorded and therefore would be publicly available.

In fact, Chicago Title paid $34.00 in fees to the Johnson County Register of Deeds to record the mortgage and $5.00 to record the release, amounts consistent with the statutory recording fees in effect at that time. The fee amounts paid were hand-written on the face of the respective documents when recorded by the register of deeds. Chicago Title did not return to plaintiffs the excess amounts collected for recording fees.

---

[1] The facts as stated in this opinion are uncontroverted for purposes of this motion.

In March 2003, Chicago Title acted as settlement agent for plaintiffs when they refinanced their mortgage yet again. In that instance, Chicago Title charged plaintiffs $40.00 for recording fees, although Chicago Title eventually paid $64.00 in fees to record the relevant documents.

Plaintiffs filed the instant action on September 28, 2006. Plaintiffs have brought claims against Chicago Title for fraud, unjust enrichment, breach of fiduciary duty, conversion, breach of contract, and money had and received. Plaintiffs also seek to certify this action as a class action on behalf of persons in various states from whom Chicago Title collected amounts for recording fees in excess of the fees it actually paid. Plaintiffs' motion for class certification is presently pending.

## II.     Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 910th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.     Statute of Limitations Defense

4

*A. Fraud Claim*

Chicago Title seeks summary judgment on plaintiffs' fraud claim, arguing that the claim is barred by the applicable Kansas two-year statute of limitations, Kan. Stat. Ann. § 60-513(a)(3).[2] The limitations statute provides, however, that such a cause of action "shall not be deemed to have accrued until the fraud is discovered." *Id.* The Kansas Supreme Court has interpreted "discovery of the fraud" as follows:

> This rule is that in order to prevent the running of the statute of limitations in proceedings for relief on account of fraud, it must appear not only that the complainant was in ignorance of the fraud, but also that he did not have possession of the means of detecting the fraudulent arrangement. To prevent the barring of an action, it must appear that the fraud not only was not discovered but could not have been discovered with reasonable diligence, until a time falling within the statutory period before the action was begun.
>
> . . .
>
> [T]he phrase "discovery of the fraud", which would start the statute of limitations to running, means the discovery by the person defrauded of such facts indicating he had been defrauded as would cause a reasonably prudent person to investigate, and which, if investigated with reasonable diligence, would lead to knowledge of the fraud.

*Wolf v. Brungardt*, 215 Kan. 272, 281-82, 524 P.2d 726, 733-34 (1974) (citations omitted); *see also Rajala v. Allied Corp.*, 919 F.2d 610, 625 (10th Cir. 1990) (quoting

---

[2] Kansas limitations law applies in this case. "When federal jurisdiction is invoked on the basis of diversity of citizenship a federal court is to apply the substantive law, including statutes of limitations, which the forum's courts would apply to the claims in the suit." *Miller v. Armstrong World Indus.*, 949 F.2d 1088, 1089 n.3 (10th Cir. 1991); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (federal court sitting in diversity jurisdiction must apply forum state's choice of law rules to determine which state's substantive law applies). Kansas courts apply their own state's statutes of limitations. *Green v. Kensinger*, 199 Kan. 220, 223, 429 P.2d 95, 98 (1967).

5

*Wolf* for interpretation of "discovery of the fraud" under Kansas law).

Chicago Title argues that when plaintiffs' mortgage and release were recorded in early 2002, with the notation on the documents of the actual recording fees paid, plaintiffs gained constructive knowledge of the those fees and thus of the alleged fraud. Chicago Title relies on Kansas's constructive notice statute, Kan. Stat. Ann. § 58-2222, which provides as follows:

> Every such instrument [conveying or affecting real estate] in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice.

*Id.* Chicago Title further relies on a line of Kansas cases beginning with *Black v. Black*, 64 Kan. 689, 68 P. 662 (1902), in which the Kansas Supreme Court barred fraud claims on the basis that the statute of limitations began to run upon the recording of documents containing evidence of the alleged fraud. In *Black*, the court stated the rule as follows:

> [T]he language employed in the statute, "until discovery of the fraud," does not mean until the party complaining had actual knowledge of the fraud alleged to have been committed, but that constructive notice of the fraud is sufficient to set the statute in motion, even though there is no actual notice, and that where the means of discovery lie in public records required by law to be kept, involving the very transaction in hand, and the interests of the parties to the litigation, in such case the public records themselves are sufficient notice of the fraud to set the statute in motion.

*Id.* at 704, 68 P. at 666. The court further quoted with approval the following standard:

> Where the transaction is a mater of public record, either through conveyance registered as required by law, or through other means, so that the party contending has abundant means of finding out the facts of the transaction and its nature, there can be no concealment; and he will be

6

>charged with notice of the transaction, and the facts which a diligent investigation thereof would develop. A party must be presumed to know what by the exercise of reasonable diligence he might have discovered; and when the fundamental facts upon which the alleged fraud rests are matters of public record, open to inspection, he will not be permitted to plead ignorance of the fraud in order to evade the operation of the statute.

*Id.* at 704, 68 P. at 667 (citation omitted).

Chicago Title argues that, under section 58-2222 and the rule stated in *Black*, the public record of plaintiffs' mortgage and release, including the notations of the recording fees paid, gave constructive notice to plaintiffs of the fees actually paid, and therefore of the alleged fraud. Chicago Title thus argues that plaintiffs' fraud claim (brought more than four years after the recording) is time-barred.[3]

Plaintiffs first argue that the hand-written notations of the recording fees that were placed on the documents when they were recorded do not fall within the "contents" of those documents, and that section 58-2222 therefore did not impart constructive notice of those fees to plaintiffs. The Court rejects plaintiffs' argument that notice under the statute extends only to the documents as they existed prior to recording, and not to the documents as recorded. Kansas law requires a register of deeds to endorse on all recorded documents the time and date of its reception and the recording fees received.

---

[3]No evidence has been provided concerning the date on which plaintiffs acquired actual notice of the recording fees paid by Chicago Title, and thus of the alleged fraud. The parties appear to agree that plaintiffs did not have such actual notice until shortly before the lawsuit was filed. At any rate, Chicago Title does not argue in this motion that plaintiffs' claims are time-barred based on actual notice by plaintiffs of their causes of action.

7

Kan. Stat. Ann. § 19-1206. The register of deeds is further required to keep a separate record of recorded documents, including the time of reception and recording fees received. *Id.* Thus, the public record of any recorded document includes the amount of the recording fee (as well as the time of recording, which may be material in priority disputes), and section 58-2222 is most reasonably read with that understanding.

The Court does agree with plaintiffs, however, that the *Black* rule is subject to various exceptions recognized in other cases by the Kansas Supreme Court, which exceptions may apply in the present case. The Supreme Court noted the limited nature of the *Black* rule in *Hutto v. Knowlton*, 82 Kan. 445, 108 P. 825 (1910), as follows:

> The rule itself was admirably expressed [in *Black*], but the foundation of it was not so definitely stated, and may be said to consist in this: Where a public record is required by law to be kept as a source of information respecting property rights and interests, a duty rests upon anyone to whom the information is material to improve with diligence the opportunity of learning that which the record discloses. It follows that, if the opportunity be neglected, the interested person will be bound to the same extent as if he had in fact examined the record. But the rule is no broader than its basis, and if for any reason no obligation exists to consult the record, or if the interested person be circumvented from taking advantage of his opportunity, the rule does not obtain.

*Id.* at 448-49, 108 P. at 826.

The first exception to the *Black* rule that may apply here is the exception for fiduciary relationships. In *Donaldson v. Jacobitz*, 67 Kan. 244, 72 P. 846 (1903), the court reconciled *Black* with an earlier case, *Duffitt v. Tuhan*, in which no constructive notice had been found from the public record; the court noted that in *Duffitt* the "fiduciary relation between the parties" was "sufficient to relieve the owner from any

8

obligation to watch the records for a tax deed." *Donaldson*, 67 Kan. at 247, 72 P. at 847

(citing *Duffitt v. Tuhan*, 28 Kan. 292 (1882)).

In *Hinze v. Hinze*, 76 Kan. 169, 90 P. 762 (1907), the court set forth this exception

more clearly:

> The doctrine is well settled that notice imparted by the record will constitute constructive discovery of fraud, save in exceptional cases, where for special reasons the aggrieved person ought not to be bound. ... In the present case, a resulting trust is shown, and from the facts which disclose the trust it appears that the fiduciary relations which existed between the husband [who allegedly committed the fraud] and wife [plaintiff] furnish as cogent reasons for holding constructive notice insufficient as in the case of an express trust. The husband was the agent of the wife, and it was his duty to disclose the true state of facts, and no duty was imposed upon the wife to search the records, or to anticipate that her agent had been unfaithful to the confidence reposed in him.

*Id.* at 170-71, 90 P. at 762-63. The court went on to quote with approval the following

statement of another court:

> The failure to use ordinary diligence to discover the fraud may be excused where there exists some relation of trust and confidence—as, principal and agent, client and attorney, cestui que trust and trustee—between the party committing the fraud, and the party who is affected by it, rendering the duty of the former to disclose to the latter the true state of the transaction, and when it appears that it was through confidence in the party who committed the fraud that the other was prevented from discovering it.

*Id.* at 172-73, 90 P. at 763 (citation omitted).

In *Duphorne v. Moore*, 82 Kan. 159, 107 P. 791 (1910), the court noted this

exception for fiduciaries in its statement of the general rule:

> The existence of a public record showing facts disclosing a fraud, the perpetrator of which sustains no fiduciary relation to the victim, is deemed to impute knowledge thereof to any one who in the exercise of reasonable

9

care for his own protection would be led to examine it.

*Id.* at 162, 107 P. at 791 (citation omitted).

Finally, in *Hutto*, the court, after explaining that the *Black* rule is subject to limits, noted this exception:

> Where fiduciary relations exist requiring the disclosure of the true state of facts, there is no reason to anticipate unfaithfulness, and the obligation to search the records is relaxed.

*Hutto*, 82 Kan. at 449, 108 P. at 826 (citing *Hinze* and *Donaldson*).

In the present case, plaintiffs have alleged a fiduciary relationship with Chicago Title, its closing and escrow agent. Kansas courts have recognized that such a relationship with a closing and escrow agent may be fiduciary in nature. *See Ford v. Guarantee Abstract & Title Co.*, 220 Kan. 244, 260-61, 553 P.2d 254, 267-68 (1976); *Sanders v. Park Towne, Ltd.*, 2 Kan. App. 2d 313, 316-17, 578 P.2d 1131, 1134-35 (1978).[4] Accordingly, because this exception for fiduciaries may apply, the Court cannot say that the *Black* rule must apply here as a matter of law.

In addition, the Kansas Supreme Court has refused to follow *Black* in some cases

---

[4]The Court applies Kansas substantive law to plaintiffs' tort claims. In Kansas, tort actions are governed by the law of the state in which the tort occurred, that is, where the wrong was felt. *See Ling v. Jan's Liquors*, 237 Kan. 629, 634-35, 703 P.2d 731, 735 (1985). Because the alleged wrong to plaintiffs involved financial harm, the Court looks to the state in which plaintiffs felt that financial injury. *See Fusion, Inc. v. Nebraska Aluminum Castings, Inc.*, No. 95-2366-JWL, 1997 WL 51227, at *24 (D. Kan. Jan. 23, 1997). Because plaintiffs were residents of Kansas at the time of their alleged injury, the Court will apply that state's substantive law here. *See id.* (applying substantive law of state of claimant's residence to fiduciary duty claim).

10

in which the plaintiff could not reasonably have been expected to check the public record. As noted above, in *Hutto* the court stated that the *Black* rule was "no broader than its basis," and that "if for any reason no obligation exists to consult the record . . . the rule does not obtain." *Hutto*, 82 Kan. at 448-49, 108 P. at 826. Thus, for example, the court noted, as it had held previously in *Duffitt*, "[t]here is no obligation resting upon a landlord to watch the record for tax deeds fraudulently taken out by his tenant." *Id.* at 449, 108 P. at 826 (citing *Duffitt*, 28 Kan. 292).

In *Gates v. Kansas Farmers Union Royalty Co.*, 153 Kan. 459, 111 P.2d 1098 (1941), the court refused to follow the general rule from *Black* and held that the recording of a deed that fraudulently named an additional grantee was not constructive notice of the fraud so as to start the statute of limitations. *Id.* at 459 syl., 111 P.2d at 1098 syl. The court distinguished *Black* and cases following its rule as follows:

> None of the cases [following the *Black* rule] was brought by the owner of property who had executed a deed thereto to set it aside because of the fraudulent inclusion therein of the name of a grantee. An owner of real property is not bound in such a way as to start the running of the statute of limitations by the constructive notice of the recording of a deed to which his name as grantor has been forged; neither is the recording of a deed executed by the owner of a property constructive notice to the grantor of the fact that there had been fraudulently included in the deed a description of property other than that which the grantor had intended to convey so as to start the running of the statute of limitations.
>
> We think the same rule would apply to the fraudulent insertion in the deed of another or different grantee than that intended to be used by the grantor . . . . Normally an owner of the property who executes a deed therefor has no occasion to examine the record after the deed is recorded to ascertain if a fraud has been committed upon him by the inclusion of additional real property or an additional grantee. Certainly we think that

11

>would be true in the absence of any fact or circumstances which would cause a reasonably prudent grantor to suspect fraud practiced upon him in that manner.

*Id.* at 467-68, 111 P.2d at 1103-04 (citations omitted).

Finally, in *Kotzman v. Papish*, 169 Kan. 431, 219 P.2d 425 (1950), the court noted that the *Black* rule, "while correctly stated as applied to that case, has not been held all-inclusive either before or since the case was decided." *Id.* at 434, 219 P.2d at 427. After reviewing a number of cases, including *Duffitt*, *Hutto*, and *Gates*, the court held that the trial court had been justified in the case before it in holding that "the recording of the deed did not impart notice to the plaintiff that her name as a grantee had been omitted." *Id.* at 435, 219 P.2d at 428.

Accordingly, the Kansas Supreme Court has refused to apply the rule stated in *Black* in several cases in which the plaintiff could not have been expected to avail himself of the public record on the chance of discovering a fraud. The Court believes that the Kansas Supreme Court would likely conclude that the present case fits this exception more readily than it fits the rule. Mortgagees could not reasonably be expected to have occasion to check the public recording of their mortgages, such that a fraud in collecting recording fees could be discovered. Therefore, for this alternative reason, the Court does not agree that the *Black* rule applies here as a matter of law.[5]

---

[5]Plaintiffs also argue that the *Black* rule shouldn't apply here because they were lulled into reliance on Chicago Title's alleged misrepresentation regarding the recording fees and the cause of action was therefore concealed. *See, e.g.*, *Stratton v. Wood Constr.*
(continued...)

12

Chicago Title also argues that plaintiffs should be charged with discovery of the alleged fraud at the time of recording even without resort to the public record. Specifically, Chicago Title argues that plaintiffs had constructive notice of the applicable recording fee rates from Kan. Stat. Ann. § 28-115, which in 2002 mandated fees of $6.00 for the first page and $2.00 for each succeeding page for mortgages, and $5.00 for releases of mortgages. *See id.*; Kan. Sess. Laws 2002, ch. 98, § 1. Chicago Title argues that because plaintiffs had copies of the mortgage and release to be recorded, they could have calculated the actual fee amounts at the time of the recording.

In support of this position, Chicago Title cites the time-worn maxim that "[e]veryone is presumed to know the law." *See Centro Mgmt., Inc. v. Kansas Dept. Of Human Resources*, 237 Kan. 369, 376, 699 P.2d 524, 530 (1985); *see also Knight v. Myers*, 12 Kan. App. 2d 469, 475, 748 P.2d 896, 901 (1988) ("Everyone is presumed to know the law, including relevant statutes of limitations."). Chicago Title has not identified any Kansas authority, however, applying this maxim in the context of the fraud discovery rule. The Court believes that the Kansas Supreme Court, if presented with the question, would treat constructive notice gleaned from the public law in the same manner

---

[5](...continued)
*Co.*, 178 Kan. 269, 274-75, 284 P.2d 636, 639-40 (1955). This concept of concealment would not apply here, however, because plaintiffs have not provided evidence of any affirmative conduct by Chicago Title separate from the alleged misrepresentation itelf that lulled plaintiffs into foregoing opportunities to investigate the public record. *See Purification Int'l, Inc. v. OHM Remediation Servs. Corp.*, 96-2051-JWL, 1997 WL 94225, at *6 n.2 (D. Kan. Jan. 31, 1997) (citing *City of Wichita, Kan. v. U.S. Gypsum Co.*, 72 F.3d 1491, 1499 (10th Cir. 1996)).

that it treats constructive notice gleaned from the public record. In this case, the Court concludes that persons at real estate closings could not reasonably be expected to consult the public laws concerning recording fee rates any more than they could be expected to consult the public record. Accordingly, the Court does not agree with Chicago Title that plaintiffs should be charged with constructive notice of the alleged fraud at the time of the closing as a matter of law.[6]

In the absence of the specific constructive notice urged by plaintiffs, the application of the statute of limitations turns on the general rule—when plaintiffs should have discovered the fraud by the exercise of reasonable diligence. The Court concludes that that question is one of fact for the jury in this case. *See Wolf v. Preferred Risk Life Ins. Co.*, 728 F.2d 1304, 1306-07 (10th Cir. 1984) (fraud discovery rule under Kansas law may present issue of fact inappropriate for resolution upon summary judgment). Therefore, Chicago Title's motion for summary judgment on plaintiffs' fraud claim on the basis of the statute of limitations is denied.[7]

---

[6]Moreover, the Court notes that Chicago Title, in opposing class certification in this case, has argued and presented evidence that even if a closing agent has a copy of the documents to be recorded, the agent may be unable to determine the actual recording fees with certainty, given variations in county requirements regarding the amount of space needed for stamps at the end of a document. *See* Defendant's Opposition to Plaintiffs' Motion for Class Certification (Doc. # 124) at 4. Accordingly, Chicago Title should not be able to argue that consumers can calculate the exact amount of the expected recording fees when its own agents cannot do so.

[7]At trial, Chicago Title will be permitted to argue that public record and the recording fee statute provided plaintiffs with sufficient facts from which plaintiffs should
(continued...)

### *B.    Breach of Fiduciary Duty and Conversion Claims*

Chicago Title also seeks summary judgment on plaintiffs' claims of breach of fiduciary duty and conversion, on the grounds that those claims are time-barred under Kan. Stat. Ann. § 60-513, even after application of a discovery rule. Plaintiffs do not dispute that those claims are also governed by the two-year statute of limitations set forth in section 60-513. The discovery rule for claims other than fraud under section 60-513 is stated as follows:

> [T]he causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party . . . .

*Id.* (b).

Chicago Title makes the same arguments with respect to these claims that it did with respect to plaintiffs' fraud claim. For the same reasons as set forth above, the Court concludes that a question of fact exists concerning whether the fact of plaintiffs' injury from the alleged overcharging of recording fees was reasonably ascertainable at the time of the recording. Accordingly, the motion for summary judgment on these claims on limitations grounds is denied.

---

[7](...continued)
have investigated and discovered the fraud, just as plaintiffs will be permitted to argue that a fiduciary relationship existed and that reasonable customers therefore would not have conducted any investigation. Thus, a question of fact arises for the jury concerning how reasonable customers in plaintiffs' position would have reacted.

### *C.     Unjust Enrichment and Money Had and Received Claims*

Chicago Title argues that the limitations period for plaintiffs' unjust enrichment claim is not qualified by any discovery rule, and that the claim is therefore time-barred. A claim for unjust enrichment is subject to a three-year statute of limitations for implied contracts under Kan. Stat. Ann. § 60-512. *See, e.g.*, *Socophi S.P.R.L. v. Airport Sys. Int'l, Inc.*, 30 Fed. App'x 862, 864-65, 2002 WL 220604, at *2 (10th Cir. Feb. 13, 2002) (applying Kansas law); *Lightcap v. Mobil Oil Corp.*, 221 Kan. 448, 464, 562 P.2d 1, 13 (1977); *Hartman v. Stumbo*, 195 Kan. 634, 637, 408 P.2d 693, 696 (1965). As Chicago Title correctly points out, that statute does not contain a discovery provision like the one found in section 60-513. *See Stehlik v. Weaver*, 206 Kan. 629, 637, 482 P.2d 21, 27 (1971) (applicable limitations periods were "three years for an action based on unjust enrichment (K.S.A. 60-512) and two years *after discovery* for an action based on fraud (K.S.A. 60-513)") (emphasis added). Therefore, the Court agrees that plaintiffs' claim for unjust enrichment accrued at the time of the recording in 2002, when Chicago Title spent less money on recording fees than it had received for such purpose.

In *Perry H. Bacon Trust v. Transition Partners, Limited*, 298 F. Supp. 2d 1182 (D. Kan. 2004), this Court noted that the limitations period for a statutory cause of action, governed by Kan. Stat. Ann. § 60-512, might be subject to a discovery rule if the statutory cause of action was fraud-based and similar to a common-law fraud claim. *Id.* at 1189-92. Plaintiffs' common-law claim for unjust enrichment, however, is not fraud-based; rather, the claim requires proof of the following elements:

16

> (1) a benefit conferred; (2) an appreciation or knowledge of the benefit by the one receiving the benefit; and (3) the acceptance or retention of the benefit under such circumstances as to make it inequitable to retain the benefit.

*In re Estate of Sauder*, 283 Kan. 694, 719, 156 P.3d 1204, 1220 (2007). These elements are quite distinct from those governing fraud. Accordingly, in the absence of any Kansas authority applying a discovery rule to a claim for unjust enrichment, the Court will not apply such a rule in this case.

The Court further concludes that, although Chicago Title addressed plaintiffs' claim for money had and received as subject to Kan. Stat. Ann. § 60-513, the claim is in fact a claim for restitution, and is therefore governed by the three-year limitations period of Kan. Stat. Ann. § 60-512. *See Mackey-Woodard, Inc. v. Citizens State Bank of Cheney*, 197 Kan. 536, 547-49, 419 P.2d 847, 856-57 (1966) (applying three-year statute of limitations where claim was upon implied contract for money had and received, and not upon tort of conversion); *Dougherty v. Norlin*, 147 Kan. 565, 567, 78 P.2d 65, 66 (1938) (distinguishing between claims in tort and claims for money had and received, applying three-year statute of limitations); *Edson Consolidated Sch. Dist. No. 2 of Sherman Co. v. School Dist. No. 64 of Sherman Co.*, 145 Kan. 847, 848, 67 P.2d 567, 568 (1937) (petition did not state a cause of action for tort, but instead stated a cause of action for money had and received, that is, an action in quasi-contract for restitution). Again, section 60-512 does not contain a discovery rule, and plaintiffs' claim for money had and received would also be time-barred. *See Dougherty*, 147 Kan. at 568, 78 P.2d

at 67 (rejecting discovery rule for claim of money had and received).

Plaintiffs filed suit more than three years after their claims for unjust enrichment and money had and received accrued. Therefore, those claims are time-barred, and summary judgment is awarded to Chicago Title on the claims.

## IV.     Setoff

Chicago Title argues that it is entitled to summary judgment on all of plaintiffs' claims under the equitable doctrine of setoff. Chicago Title relies on the undisputed facts that in early 2003, in a separate closing conducted for plaintiffs, it undercharged plaintiffs by $24.00 for fees that it ultimately paid to record plaintiffs' documents. Chicago Title therefore argues that this undercharging represents a debt due from plaintiffs that exceeds—and therefore extinguishes by setoff—plaintiffs' claim for $6.00 in actual damages.

The Court rejects this argument for a number of reasons. First, Chicago Title has not identified any legal basis for its recovery of the $24.00 from plaintiffs. The fact that Chicago may not have charged plaintiffs as much as it wished does not mean as a legal matter that it may recover the difference from plaintiffs. Chicago Title has not identified any theory or cause of action, such as breach of contract, by which it might claim a debt owed by plaintiffs.[8] Therefore, Chicago Title has not established that it is entitled to

---

[8]In this regard, it is worth noting that because Chicago Title's claim arose (in
(continued...)

18

setoff as a matter of law, and summary judgment is not appropriate.

Second, the Court agrees that plaintiffs' claims cannot be extinguished in this manner because plaintiffs also seek punitive damages. Thus, the final liquidated amount of plaintiffs' damages is not yet known. Chicago Title has not provided any authority to support its novel theory that the setoff should be applied before plaintiffs' entitlement to punitive damages is determined, and that if plaintiffs suffer a net of no damages, they may not recover punitive damages.

Third, the doctrine of equitable setoff is subject to equitable defenses (such as the clean hands doctrine), and the party seeking equitable setoff must demonstrate equitable grounds for its application. *See Mynatt v. Collis*, 274 Kan. 850, 881, 57 P.3d 513, 535 (2002). This Court is certainly not prepared to conclude at this stage, as a matter of law, that equity compels application of a setoff in this case. For these reasons, Chicago Title's motion for summary judgment on this basis is denied.

---

[8](...continued)
early 2003) out of a different transaction than the one giving rise to plaintiffs' claims, any possible claim by Chicago Title other than one for breach of a written contract would be barred under the applicable Kansas two- and three-year statutes of limitations. *See Lightcap v. Mobil Oil Corp.*, 221 Kan. 448, 464, 562 P.2d 1, 13 (1977) (to avoid application of statutes of limitations to setoff claim, parties claims must have arisen out of the same transaction). In this regard, the discovery rule would not act to toll the limitations period for any tort claim by Chicago Title because it would have had knowledge of the undercharging at the time of the recording.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant Chicago Title Insurance Company's motion for summary judgment (Doc. # 77) is granted in part and denied in part.  The motion is granted with respect to plaintiffs' claims for unjust enrichment and money had and received, and judgment is entered in favor of defendant on those claims.  The motion is denied in all other respects.

IT IS SO ORDERED.

Dated this 15th day of October, 2007, in Kansas City, Kansas.

        s/ John W. Lungstrum
        John W. Lungstrum
        United States District Judge