IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JAMES A. DOLL and AIMEE DOLL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 06-2416-JWL |
| | ) | |
| CHICAGO TITLE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

In this diversity action, plaintiffs James and Aimee Doll, on behalf of themselves and numerous potential class members, have brought contract and tort claims against defendant Chicago Title Insurance Company (Chicago Title). Plaintiffs' claims are based on their allegation that Chicago Title, in acting as plaintiffs' closing agent in a real estate refinancing, collected and retained an amount for recording fees in excess of the actual fees paid by Chicago Title for recording plaintiffs' mortgage and release.

This matter presently comes before the Court on plaintiffs' motions for certification as a class action under Fed. R. Civ. P. 23 (Doc. ## 33, 71). For the reasons set forth below, the motions are denied.

## I.   **Background**

When plaintiffs refinanced the mortgage on their Kansas house in 2002, Chicago Title acted as the settlement agent, with the closing occurring on January 24, 2002.  The HUD-1 settlement statement prepared by Chicago Title for the closing indicated recording fees of $45 for the mortgage and release, and plaintiffs paid that amount to Chicago Title.  Chicago Title actually paid $39 in fees to record plaintiffs' documents, and Chicago Title did not return the excess amount to plaintiffs.

Plaintiffs filed the instant action on September 28, 2006, by which they seek compensatory and punitive damages for Chicago Title's conduct with respect to its collection and retention of the excess amount for recording fees.  In their amended complaint, plaintiffs alleged claims for fraud, unjust enrichment, breach of fiduciary duty, conversion, breach of contract, and money had and received.

On October 15, 2007, the Court granted in part and denied in part Chicago Title's motion for summary judgment.  *See* Memorandum and Order of Oct. 15, 2007 (Doc. # 138).  The Court first rejected Chicago Title's argument that plaintiffs' fraud, breach of fiduciary duty, and conversion claims were barred as a matter of law under the applicable Kansas two-year statute of limitations, Kan. Stat. Ann. § 60-513.  *See id.* at 4-15.  Plaintiffs relied on Kansas's discovery rule.  Under that rule, plaintiffs' fraud claim did not accrue until plaintiffs discovered such facts as would have caused a reasonably prudent person to investigate and which, if investigated with reasonable diligence, would have led to the discovery of the fraud.  *See id.* at 5.  Similarly, plaintiffs' fiduciary duty

and conversion claims did not accrue under section 60-513 until the fact of their injury became "reasonably ascertainable". *See id.* at 15.

Chicago Title argued that either the notation on the documents, when they were recorded, of the actual fees paid or the statutory fee rate schedule gave constructive notice to plaintiffs of the overcharging and, thus, their causes of action. Chicago Title relied on Kan. Stat. Ann. § 58-2222 and a line of cases beginning with *Black v. Black*, 64 Kan. 689, 68 P. 662 (1902). The Court conducted a thorough analysis of those cases and concluded that exceptions to the *Black* rule for constructive notice of publicly-recorded documents may apply here. *See* Memorandum and Order at 8-14. Accordingly, the Court denied summary judgment and concluded that application of the statute of limitations to plaintiffs would turn on the factual issue of when plaintiffs should have discovered their claims under the general standards of the discovery rule. *See id.* at 14-15.

The Court did grant summary judgment in favor of Chicago Title on plaintiffs' claims of unjust enrichment and money had and received, on the basis that those claims are not subject to any discovery rule under the applicable Kansas three-year statute of limitations, Kan. Stat. Ann. § 60-512. *See id.* at 16-18. Finally, the Court rejected Chicago Title's argument that it was entitled to equitable setoff as a matter of law with respect to its undercharging the Dolls in 2003 for recording fees for another refinancing. *See id.* at 18-19.

Plaintiffs filed their action as a putative class action, and they have now moved

for certification as a class action under Fed. R. Civ. P. 23(b)(3).  As set forth in their

reply brief, plaintiffs seek certification of the following class:

> All individuals or entities, except Missouri residents, for whom Chicago
> Title acted as a settlement or closing agent in a transaction that has closed
> since September 28, 2001 involving a HUD 1 Settlement Statement in
> which the amount represented and collected for recording fees was greater
> than the amount paid for recording fees in connection with the transaction,
> and in which the excess was not refunded.

The putative class members would include residents of 17 states and the District of

Columbia.[1]  Plaintiffs seek certification with respect to their claims for breach of

contract, breach of fiduciary duty, and conversion; and with respect to their claims for

both compensatory and punitive damages.


**II.    <u>Applicable Standards</u>**

As the parties seeking class certification, plaintiffs must show "under a strict

burden of proof" that the requirements for a class action under Fed. R. Civ. P. 23 are

"clearly met".  *See Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (citing *Reed

v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988)); *see also Shook v. El Paso County*, 386

F.3d 963, 968 (10th Cir. 2004).  In analyzing whether a plaintiff has met that burden, the

Court "must accept the substantive allegations of the complaint as true, although it need

---

[1]Plaintiffs seek to include class members residing (presumably, at the time of their
closings) in Arizona, the District of Columbia, Florida, Illinois, Indiana, Kansas,
Louisiana, Maryland, Minnesota, Montana, New Jersey, New York, Ohio, Pennsylvania,
Texas, Virginia, Washington, and Wisconsin.

not blindly rely on conclusory allegations which parrot Rule 23, and may consider the legal and factual issues presented by plaintiff's complaints." *Shook*, 386 F.3d at 968 (quotations omitted).

Rule 23(a) sets out the first four prerequisites for certification as a class action:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In this case, Chicago Title does not challenge plaintiffs' showing on the first two requirements of numerosity and commonality. The latter two requirements of typicality and adequacy have been applied as follows.

"A prerequisite for certification is that the class representative be a part of the class and possess the same interest and suffer the same injury as class members." *Rector v. City and County of Denver*, 348 F.3d 935, 949 (10th Cir. 2003) (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

"The adequacy of representation requirement is of particular importance because inadequate representation would infringe upon the due process rights of absentee class members who are bound by the final judgment of the suit." *Robinson v. Gillespie*, 219 F.R.D. 179, 185 (D. Kan. 2003) (quoting *Edgington v. R.G. Dickinson & Co.*, 139 F.R.D.

183, 190 (D. Kan. 1991)).  "Resolution of two questions determines legal adequacy:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).  To satisfy this requirement, the plaintiffs must show that their interests are not antagonistic to those of class members.  *See Robinson*, 219 F.R.D. at 185; *Aks v. Southgate Trust Co.*, 1992 WL 401708, at *4 (D. Kan. 1992).

In this action, plaintiffs seek certification under Rule 23(b)(3), which provides additional requirements:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> . . .
>
> (3)  the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include:   (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;   (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

### III.    Analysis of Plaintiffs' Showing Under Rule 23

In this case, the Court concludes that plaintiffs have failed to meet their burden under Rule 23 to establish typicality, adequacy, predominance, and superiority. Because those requirements overlap, the Court addresses them together, within the context of each particular facet of plaintiffs' suit that makes certification inappropriate. *See Commander Props. Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529, 535 (D. Kan. 1995) (the typicality requirement dovetails with the adequacy requirement as "[a]typical claims potentially create antagonistic interests"); *Aks v. Southgate Trust*, 1992 WL 401708, at *4 (addressing typicality, adequacy, and predominance together because those requirements tend to overlap).

A.   <u>*Application of Statutes of Limitations*</u>

The Court first concludes that class certification would be improper here in light of various issues raised in applying applicable statutes of limitations to the claims of the class members. As a preliminary matter, Kansas limitations law applies in this case. "When federal jurisdiction is invoked on the basis of diversity of citizenship a federal court is to apply the substantive law, including statutes of limitations, which the forum's courts would apply to the claims in the suit." *Miller v. Armstrong World Indus.*, 949 F.2d 1088, 1089 n.3 (10th Cir. 1991); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (federal court sitting in diversity jurisdiction must apply forum state's choice of law rules to determine which state's substantive law applies). Kansas courts apply their own state's statutes of limitations. *Green v. Kensinger*, 199 Kan. 220,

223, 429 P.2d 95, 98 (1967).  The Court also applies Kansas's borrowing statute, Kan. Stat. Ann. § 60-516, as necessary.  *See Garcia v. International Elevator Co.*, 358 F.3d 777, 779 (10th Cir. 2004).

This Court has previously addressed the effect of a unique defense on class certification:

> Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.  There is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.  The presence of actual unique defenses destroy the representatives' typicality because the representatives' defenses are no longer typical of the class.  Also, unique defenses can make a representative inadequate because they are likely to usurp a significant portion of the litigant's time and energy.  If the defendants are successful in raising a unique defense, the entire class is bound by a defense which is ordinarily only applicable to the representative individually.  Finally, because such defenses are unique to the representatives, individual questions may predominate over common ones.  Thus, if actual unique defenses are found by the court, the class may not be certified.

*Aks v. Southgate Trust*, 1992 WL 401708, at *5 (citations and quotations omitted).

8

1.    CONFLICT   WITH   CLASS MEMBERS NOT
      OTHERWISE SUBJECT TO THE DISCOVERY RULE

In this case, plaintiffs' conversion and breach of fiduciary duty claims are governed by a two-year statute of limitations, Kan. Stat. Ann. § 60-513(a). As discussed in the Court's summary judgment order, plaintiffs did not file the instant action until more than four years had passed since their closing; accordingly, plaintiffs must avail themselves of the discovery rule to maintain their claims in the face of Chicago Title's limitations defense. For that reason, plaintiffs' claims are not typical of those of other class members, many of whom held their closing within two years of the commencement of this suit and therefore do not face a limitations defense. If Chicago Title were to succeed on its limitations defense to plaintiffs' tort claims, other class members with no limitations problem would be bound to the adverse judgment against plaintiffs. Thus, these plaintiffs cannot adequately represent the interests of all class members. *See Commander Props.*, 164 F.R.D. at 537; *Aks v. Southgate Trust*, 1992 WL 401708, at *5.

2.    INDIVIDUAL   QUESTIONS INVOLVED IN THE
      APPLICATION OF THE DISCOVERY RULE

Moreover, the Court concludes that commons questions do not predominate here in light of the need to apply the discovery rule to the tort claims of those class members who, like plaintiffs, attended a closing more than two years prior to this suit's commencement. Application of the statute of limitations and the discovery rule involves the consideration of facts unique to each class member. For instance, some class members may have acquired actual notice of overcharging for recording fees—thereby

9

triggering the statute of limitations—at or shortly after their respective closings, perhaps from the closing agent or from recorded documents with fee notations on them or even from double-checking the fees out of curiosity. In addition, when a claim became reasonably ascertainable to a particular class member depends on facts unique to that member's closing. Those unique circumstances might include whether the class member knew or was told that the HUD-1 recording fee was merely an estimate; any notations made on the member's documents regarding fees; the class member's representation by counsel with respect to the closing; and whether and to what extent the member had access to the recorded documents or publication of fee rates.

The Court thus agrees with those courts that have denied class certification in recent cases requiring application of the discovery rule to overcome a limitations defense. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321-27 (4th Cir. 2006); *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 309-10 (S.D. Ala. 2006); *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 675 (S.D. Ala. 2005); *O'Connor v. Boeing North American, Inc.*, 197 F.R.D. 404, 414 (C.D. Cal. 2000). For these reasons, plaintiffs' claims are not typical, and they have not established adequacy or predominance.

Plaintiffs argue that Chicago Title has failed to offer evidence of any such unique circumstances experienced by any class member. Plaintiffs have offered no authority for their position that such evidence is necessary, however. Plaintiffs bear the burden of proof with respect to the Rule 23 requirements. The Court agrees with the reasoning of

the Fourth Circuit, which rejected a similar attempt to shift the burden of proof to the defendant in *Thorn*.  *See Thorn*, 445 F.3d at 321-22.  The question at this stage is not whether such facts have been established, but rather whether such factual issues can be resolved in a class-wide manner or whether they require individual consideration.  *See id.* at 323.  The date on which a claim became reasonably ascertainable to a particular class member can only be determined by an examination of the circumstances involving that class member; accordingly, class certification is improper here.[2]

Plaintiffs also argue that application of the discovery rule can be accomplished on a class-wide basis here, thereby avoiding consideration of facts unique to particular closings, in light of the Court's ruling on summary judgment concerning constructive notice.  The Court's ruling was not so broad, however.  The Court merely held that, under Kansas law, the public recording of plaintiffs' documents did not provide constructive notice sufficient to defeat application of the discovery rule as a matter of law.  *See* Memorandum and Order at 5-15.  The Court also concluded that application of the discovery rule to plaintiffs presented a question of fact for the jury to decide in light of all of the circumstances involving them.  *See id.* at 14.  Thus, although the Court deprived Chicago Title of a constructive notice argument that might have been applied

---

[2]The Court also disagrees with plaintiffs about the effect of a stipulation made by Chicago Title for purposes of class certification.  Chicago Title merely stipulated that it would not argue that the policies for completing the HUD-1 statement did not vary from closing to closing.  It did <u>not</u> stipulate that individual closings did not involve other unique representations or circumstances.

class-wide, it did not decide (or intend to suggest) that application of the general discovery rule may be accomplished on a class-wide basis, without consideration of each class member's particular circumstances.

Finally, plaintiffs argue that Chicago Title's limitations defense may be defeated on a class-wide basis by the doctrine of equitable tolling, based on Chicago Title's alleged failure to inform each member that it was merely estimating recording fees on the HUD-1 statement.  The Court rejects this argument as well.  Whether the Court would apply an <u>equitable</u> doctrine to toll a particular class member's statute of limitations must depend on the particular circumstances of that class member's closing, including the particular representations made to the member and the facts available to him.  *See, e.g.*, *Commander Props.*, 164 F.R.D. at 536-37 (rejecting class-wide equitable tolling argument); *Corley v. Entergy Corp.*, 220 F.R.D. 478, 488 (E.D. Tex. 2004) (denying class certification in light of individual limitations issues, including notice and equitable tolling).

### 3.   VARYING LIMITATIONS LAWS AMONG THE STATES

The Court also declines to certify a class here in light of the varying limitations laws for tort claims in the 18 jurisdictions in which the class members resided.  As noted by Chicago Title in its briefs, many of those jurisdictions have longer limitations periods for conversion or fiduciary duty claims than Kansas's two-year period.  Because the proposed class period extends back five years before this suit's filing, a class action

would include a number of class members whose tort claims could be barred under Kansas's two-year limitations period (if those members are unable to prevail under the discovery rule), but would have been timely if brought under longer limitations periods imposed in those class members' own states. Thus, the tort claims of some putative class members would be compromised by those members' inclusion in this class action. Plaintiffs would not be adequate representatives in light of such a conflict. This penalty for those non-resident class members also makes it undesirable to concentrate the litigation of all class members' claims in this Kansas forum, and therefore weighs against any finding of superiority here. *See Harding v. Tambrands, Inc.*, 165 F.R.D. 623, 631 (D. Kan. 1996).[3]

The Court also notes that plaintiffs cannot seek certification of an unjust enrichment claim in this case because their own such claim is time-barred. Accordingly, a number of class members whose own claim would be timely under Kansas's three-year limitations period for unjust enrichment have been robbed of an additional claim. Plaintiffs argue that the loss of such a claim is negligible and represents a valid, strategic decision by counsel. Nevertheless, unjust enrichment presents a distinct theory of liability, with different elements, that would provide an additional basis on which to prevail. Because plaintiffs cannot pursue such a claim, to the detriment of many class

---

[3]Of course, plaintiffs cannot solve this problem by narrowing the class definition to include only those who closed within two years of the suit's commencement because plaintiffs do not meet that definition themselves.

13

members, their claims are not typical, and plaintiffs cannot adequately represent the class.

The application of Kansas's borrowing statute presents additional problems. That statute provides that a non-Kansan's action is barred if it would be time-barred under the laws of the state in which the cause of action arose. *See* Kan. Stat. Ann. § 60-516. Ordinarily, this statute would not present any problems, as groups of plaintiffs could be carved out of the case if their own states' shorter limitations periods demanded it. By invoking the discovery rule, however, plaintiffs have made the matter far more complex. For instance, even if a particular class member's claim would be timely under Kansas's discovery rule, the discovery rule modifying the statute of limitations in the member's own state would need to be applied, to determine whether the member's claim would nonetheless be barred. As demonstrated by this Court's summary judgment opinion, the analysis of a particular state's discovery rule, including the effects of public records and constructive notice, is not necessarily a simple task. Plaintiffs have not even attempted an analysis of the 17 other jurisdictions' laws concerning the discovery rule or otherwise demonstrated how those varying laws may be applied here.

Determining where a class member's cause of action arose presents an additional complexity in applying the borrowing statute. Under Kan. Stat. Ann. § 60-516, a cause of action arises in another state when it accrues in that state, giving the plaintiff a right to sue there, and that determination involves a consideration of the other state's laws. *See Green v. Kensinger*, 199 Kan. 220, 224, 429 P.2d 95, 98-99 (1967). In most

instances, a class member's cause of action will have arisen in the state where he resided and attended his closing. In some cases, however—including that of plaintiffs themselves, who resided in Kansas but attended a closing in Missouri—the determination would be more difficult and would involve an analysis of different states' laws.

The complexity of these analyses of differing states' laws makes the class action proposed by plaintiffs unmanageable and weighs against a finding that a class action would be superior in this case. *See, e.g.*, *Commander Props.*, 164 F.R.D. at 541 ("It is this need to individually examine the laws of numerous states which makes certification unacceptable."); *Aks v. Bennett*, 150 F.R.D. 187, 192 (D. Kan. 1993) (common questions do not predominate in light of necessary application of various states' laws); *see also Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (citing variances in applicable state laws in affirming denial of class certification); *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."); *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) (certification not appropriate where differences in state law make instruction an impossible task); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300-02 (7th Cir. 1995) (although states' laws may differ only in nuances, those nuances may be important; single amalgam instruction improper).

### 4.   SUMMARY

In summary, the necessary litigation of various issues relating to Chicago Title's

limitations defense defeat typicality, adequacy, predominance, and superiority here. Accordingly, the Court denies class certification on that basis.

### B.   *Factual Circumstances Unique to Each Class Member*

The Court also concludes that plaintiffs have not established the predominance of common questions relevant to the claims for breach of contract and breach of fiduciary duty in light of the unique circumstances attending each closing. First, plaintiffs argue that the breach of contract claim is based solely on the HUD-1 statement and the representations made therein. Plaintiffs have not shown, however, that that document is a form contract of the type that would allow for class-wide determination of liability for breach of its terms. On its face, the HUD-1 statement does not purport to represent a contract between Chicago Title and the class member, and there is no merger clause. The Court agrees with Chicago Title that the terms of the contract between the parties may, in a particular case, arise also from other documents executed or oral statements made by the parties in connection with the closing. Thus, the class members' contract claims are dependent upon unique facts, and common questions do not predominate, as required.

Similarly, the Court concludes that Chicago Title's liability to a particular class member for breach of fiduciary duty must involve a consideration of the particular facts and circumstances of that member's closing. Plaintiffs argue that facts unique to each closing are irrelevant to liability on this claim because the breach is alleged to have

occurred after the closing, when Chicago Title paid the recording fees and then chose not to refund any excess fees.  The Court agrees with Chicago Title, however, that the individual circumstances of each closing may be materially relevant on the issue of liability.  For instance, a jury might find differently on this claim for breach of fiduciary duty depending on whether a particular class member was told or otherwise knew that the HUD-1 amount for recording fees was merely an estimate, or whether the class member expected any refund of *de minimis* overcharges, or whether the administrative cost would make a refund of one or two dollars impractical.  Such factual issues defeat predominance and make class certification inappropriate.[4]

---

[4]The Court does not agree with Chicago Title that its setoff defense, unique to plaintiffs, would require enough attention in the litigation to defeat typicality and adequacy.

C.    *Fiduciary Duty Standard*

The Court also denies class certification with respect to plaintiffs' claim for breach of fiduciary duty in light of the varying standards for liability among the 18 jurisdictions represented by the putative class members.  As noted above, the Court must apply Kansas choice of law rules to determine which state's substantive law governs a particular claim.  *See Klaxon*, 313 U.S. at 496.  In Kansas, tort actions are governed by the law of the state in which the tort occurred, that is, the state in which the wrong was felt.  *See Ling v. Jan's Liquors*, 237 Kan. 629, 634-35, 703 P.2d 731, 735 (1985). Because the wrong here involves financial harm, the Court would look to the state in which each class member felt that financial injury for the alleged breach of fiduciary duty—that is, the state of each class member's residence.  *See Fusion, Inc. v. Nebraska Aluminum Castings, Inc.*, 1997 WL 51227, at *24 (D. Kan. Jan. 23, 1997) (citing *St. Paul Furniture Mfg. Co. v. Bergman*, 935 F. Supp. 1180, 1187 (D. Kan. 1996)).

As Chicago Title has pointed out, the 18 different jurisdictions in which the class members resided do not employ a single standard governing liability for breach of fiduciary duty.  For example, some states impose a duty of "high" or "highest" care on the fiduciary, while others impose only a duty of ordinary or reasonable care.  Such variation would ordinarily provide a basis for denial of certification, particularly with respect to typicality, adequacy, predominance, and manageability.  *See, e.g.*, *Harding*, 165 F.R.D. at 629-32; *Commander Props.*, 164 F.R.D. at 541; *Aks v. Bennett*, 150 F.R.D. at 192; *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 341-42 (N.D. Ill. 1997) (citing

difficulty in applying 13 states' laws regarding breach of fiduciary duty in denying class certification).

Plaintiffs have not disputed this analysis by Chicago Title.  Instead, in response to this argument, plaintiffs have agreed to adopt the less strict standard of ordinary care for all class members' claims for breach of fiduciary duty, thereby obviating any potential manageability problems.  Plaintiffs' counsel again argues that such a concession represents a valid, strategic choice given their certainty of Chicago Title's liability on this claim under any standard.

The Court is not prepared at this stage to resolve the ultimate merits of plaintiffs' claims in that way.  To the extent that those merits bear on the issues relevant to class certification, the Court has not been persuaded that Chicago Title could not possibly prevail on all class members' fiduciary duty claims under any standard.  Therefore, the Court must consider the prejudice effected by counsel's choice to the claims of those class members whose own states' laws would provide a more favorable standard of liability.  Plaintiffs have not cited any authority supporting their position that they may sacrifice or prejudice some class members' claims in this way.  In light of this conflict remaining between class members, the Court concludes that plaintiffs have not satisfied the requirements of typicality and adequacy under Rule 23(a) with respect to the claim for breach of fiduciary duty.

> D.    _Punitive Damages Claim_

Plaintiffs seek to certify their claim for punitive damages. As Chicago Title has noted, the law in the 18 different jurisdictions concerning punitive damages varies greatly, including with respect to the following issues: the conduct by the defendant that must be shown; the degree of harm that must be shown; the standard of proof; different rules for claims against corporate defendants; whether the entitlement to or amount of damages is determined by the court or the jury; whether the claim for punitive damages is bifurcated from the liability phase of trial, and whether evidence relating to punitive damages may be introduced in the liability phase; statutory limitations (caps) on punitive damages; and the relationship to compensatory damages for constitutional purposes.

Plaintiffs' first response to this argument is that all class members' conversion claims should be governed by Illinois law, and that therefore all members' punitive damages claims (to the extent based on liability for conversion) would also be governed by Illinois law—thereby obviating any manageability problems arising from having punitive damage claims under varying state laws. Plaintiffs argue, for purposes of applying Kansas's choice-of-law rules, that the last act giving rise to the conversion claim was the exercise of dominion over the excess fees collected; that the place of injury is immaterial because injury need not be shown for a claim of conversion; and that Chicago Title exercised dominion over the excess fees in Illinois, the location of Chicago Title's bank account into which recording fees collected nationally were deposited and from which recording fees were paid nationally. Thus, plaintiffs argue that Illinois law governs all class members' conversion claims and thus also their punitive damage

claims.

The Court is not persuaded by plaintiffs' attempt to arrive at a single state's punitive damages law. First, the Court declines plaintiffs' invitation to limit the Kansas Supreme Court's opinion in *Ling v. Jan's Liquors* to negligence or accident cases. The Kansas Supreme Court has offered little guidance—beyond its pronouncements in *Ling*—regarding how the doctrine of *lex loci delicti* should be applied to different causes of action. In *Ling*, the supreme court noted that, in applying *lex loci delicti*, it had "never addressed the conflict of law issue in a multistate tort action—that is, where the negligent act originated outside the state, but the resultant injury occurred in the state." *Ling*, 237 Kan. at 634, 703 P.2d at 735. The court noted the general rule that the situs of the actionable wrong is the place at which the damage took place. *See id.* (quoting *Swearngin v. Sears, Roebuck & Co.*, 376 F.2d 637, 639 (10th Cir. 1967)). The court then rejected an "analytical approach" by which it would consider the various states' interests in the litigation, and chose instead the general rule applying the law of the state in which the injuries occurred. *See id.*

Federal courts in this district have consistently followed *Ling* in cases involving financial harm, applying the law of the plaintiff's residence as the state in which that financial harm occurred. *See, e.g.*, *Fusion, Inc.*, 1997 WL 51227, at *24. None of those cases has involved a claim of conversion, however. The Court recognizes that one could find ways in which to distinguish a cause of action for conversion from causes of action for fraud or breach of fiduciary duty. Nevertheless, the claim in this case involves an

allegation only of financial harm, and the Court is not persuaded that this case merits treatment different from the other financial harm tort cases.  In this context, the Court notes the *Ling* court's preference for a bright-line rule over one involving a more complex analysis.

The Court does reject plaintiffs' argument that conversion merits different treatment because it does not require a showing of damages as an element of the cause of action.  It is true that the Kansas Supreme Court has defined conversion as "the unauthorized assumption and exercise of the right of ownership over goods or personal chattel belonging to another," without explicit reference to damages.  *See Carmichael v. Halstead Nursing Ctr.,* 237 Kan. 495, 500, 701 P.2d 934, 938 (1985).  That fact, however, does not necessarily distinguish conversion from fraud or breach of fiduciary duty.  The supreme court has identified the elements of fraud without an explicit reference to damages, noting only the need for reliance to the plaintiff's detriment.  *See Alires v. McGehee*, 277 Kan. 398, 403, 85 P.2d 1191, 1195 (2004).  It does not appear that the supreme court has ever listed discrete elements including damages for a claim of breach of fiduciary duty.

Moreover, an element of damage or injury is inherent in any claim for conversion, as a conversion plaintiff must have been dispossessed of the particular property to prevail.  The Restatement definition recognizes that element of damages present within the cause of action itself:

Conversion is an intentional exercise of dominion or control over a chattel

22

> which so seriously interferes with the right of another to control it <u>that the
> actor may justly be required to pay the other the full value of the chattel</u>.

Restatement (Second) of Torts § 222A (1965); *see also* id. cmt. c (in distinguishing

conversion from trespass to chattels, noting that a conversion claim effectively results

in a forced sale of the property); *Scholfield Bros., Inc. v. State Farm Mut. Auto. Ins. Co.*,

242 Kan. 848, 850, 752 P.2d 661, 663 (1988) (citing Restatement § 222A in defining

conversion).   Again, this definition is not materially distinguishable from the

Restatement definitions for fraud and breach of fiduciary duty with respect to damages,

which make an actor "subject to liability" for loss or harm resulting from particular

conduct, without any other reference to damages. *See* Restatement (Second) of Torts §§

525, 874.   Indeed, in one comment, the Restatement links conversion and breach of

fiduciary duty, noting that the same conduct by a fiduciary may support both claims,

which would differ only with respect to the type of damages recoverable for each. *See

id.* § 927 cmt. j.   Therefore, because every claim for conversion necessarily involves an

element of harm by virtue of the dispossession of property, there is no basis for

distinguishing conversion claims involving financial injury from other tort claims in

applying *Ling* and Kansas's choice of law rules.   Once again, the Kansas Supreme

Court's preference for a bright-line rule supports this conclusion.

Accordingly, the Court concludes that, if the Kansas Supreme Court considered

the issue, it would follow *Ling* in this case and apply to the conversion claims the law

of the states in which the class members' resided at the time of their closing with

Chicago Title.

In addition, even if the Court did apply the law of the state in which Chicago Title allegedly misappropriated the excess recording fees, as plaintiffs urge, the Court would not apply Illinois law, but rather would apply the law of the location of each class member's closing.  The class member's relationship with Chicago Title was centered exclusively at that location.  Thus, any excess recording fees were collected at the local Chicago Title office; the actual recording fees were paid by Chicago Title representatives from the local office; and any refund would have been expected to come from the local office.[5]  Accordingly, even if the Court did not apply *Ling* here, the class members' conversion and punitive damages claims would nonetheless be governed by the laws of 18 different jurisdictions.[6]

Plaintiffs also argue that the manageability problems arising from applying varying laws from the 18 jurisdictions concerning punitive damages may be resolved by

---

[5]Plaintiffs have not provided evidence that any and all decisions regarding whether a particular customer could receive a refund of excess recording fees would necessarily have been made by Chicago Title at its headquarters in Illinois, instead of at the local office where the closing took place.  Regardless, following plaintiffs' position to a logical conclusion would lead to the unworkable result that the choice of law issue could turn on where a tortfeasor decided to commit the tort, instead of where the tort was actually committed.

[6]Applying the law of the location of each class member's closing would create the additional manageability problem of having one set of sub-classes (by state) for the conversion claim and another set (based on the class members' states of residence) for the fiduciary duty claim, given the fact that some class members (such as the Dolls) may have lived in one state but attended a closing in another state.

24

different sets of jury instructions and verdict interrogatories to account for any differences in standards. The Court concludes, however, that applying so many differing standards and procedures for punitive damage claims presents an insuperable barrier in this case. Moreover, apart from any procedural difficulties, plaintiffs have not persuaded the Court that a jury could be lawfully and clearly instructed regarding, and properly apply, so many different standards for punitive damages. A defendant's liability for punitive damages is too important, and that defendant is entitled not to have to rely upon an attempt to explain 18 different sets of standards to a jury.

It is for these reasons that courts have routinely refused to grant class certification in cases involving claims for punitive damages. *See, e.g.*, *Chilton Water Auth. v. Shell Oil Co.*, 1999 WL 1628000, at *8 (M.D. Ala. 1999); *Mack v. General Motors Acceptance Corp.*, 169 F.R.D. 671, 678-79 (M.D. Ala. 1996); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653-54 (C.D. Cal. 1996); *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 679 (N.D. Ga. 2003); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 215 (D. Minn. 2003); *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 294 (S.D. Ohio 1997).

In response to the Court's inquiry, plaintiffs were only able to identify three reported cases in which a multi-state punitive damage claim was certified for class determination. Those cases are not persuasive, however. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3rd Cir. 2004), involved certification of a settlement class, and therefore manageability was not relevant—a distinction noted by the Third Circuit in its opinion. *See id.* at 529. In *American Cyanamid Co. v. Stephen*, 623 N.E.2d 1065

(Ind. Ct. App. 1993), the court upheld certification under state rules of a class action involving a punitive damage claim; the court did not analyze the issue of manageability, however, and merely deferred to the trial court's judgment. *See id.* at 1074. Finally, in *Baldwin v. Kansas City Title, Inc.*, No. 0616-CV-17163 (Jackson County, Mo. Cir. Ct. Apr. 4, 2007), a trial court certified a class action involving a punitive damage claim similar to the one alleged here; however, that court specifically noted that its case involved only two states, and that the burden of applying different states' laws was therefore not great. *See id.*, slip op. at 9-11.

Accordingly, the Court concludes that, in light of the task of applying 18 jurisdictions' varying laws concerning punitive damages, a class action would not be manageable in this case, and common issues would not predominate over individual issues. Therefore, class certification is not appropriate.

Finally, in an attempt to overcome the difficulties presented by a multi-state claim, plaintiffs have agreed to allow each class member's claim for punitive damages to be governed by a single set of standards and procedures. Presumably, plaintiffs would allow Chicago Title to pick and choose the particular standards and procedures from different states that are most favorable to it on the respective issues. Once again, plaintiffs' counsel, relying on the supposed strength of their case, insist that it is to the benefit of the class to make such a concession, as a strategic litigation tactic, if necessary to insure class certification.

Again, however, the Court cannot sanction plaintiffs' attempt to compromise

virtually every class member's claim by forcing the entire class to satisfy a menu of the toughest standards plucked from the laws of various states. Such a conflict destroys typicality and renders these plaintiffs inadequate to represent fairly and ably the interests of the entire class. *See In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1300-02 (rejecting an amalgam instruction). Such prejudice to class members' claims may not be justified under plaintiffs' rationale that litigating inferior class claims is better than having to file individual actions. Contrary to plaintiffs' assertion, those are not the only options for the putative class members (as that class is defined by plaintiffs). For instance, a class made up only of Kansas residents would not present any of the manageability problems that attend multi-state class actions.[7] Nor have plaintiffs offered any authority sanctioning class certification despite such a conflict between the interests of plaintiffs and those of the class members. Therefore, the Court must conclude that an 18-jurisdiction punitive damages class action would be too unmanageable to allow for class certification under Rule 23; and that a punitive damages class action based on amalgam of various states substantive laws would not satisfy the requirements of typicality and adequacy for class certification under Rule 23.

### E.   *Conclusion*

The Court agrees with plaintiffs that the large number of potential class members

---

[7]The Court does not offer any opinion or suggestion as to whether such a class would be certified in light of the other deficiencies discussed herein.

and the very small size of the alleged overcharges appear to make a class action superior to requiring individual claims against Chicago Title, to the extent that the Court recognizes that Chicago Title will most likely not be held liable in any significant way for any tort or beach of contract it may have committed with respect to recording fees except through a class action. Nevertheless, plaintiffs have not met their burden of establishing that this particular class action meets the requirements of Rule 23. Specifically, plaintiffs have not shown that their claims are typical of the claims of the class; that they will fairly and adequately protect the interests of the class; that the questions of law or fact common to the class predominate over questions affecting only individual members; or that the proposed class action would be superior to other methods of adjudication in light of the great difficulties likely to be encountered in the management of the action. Accordingly, the Court denies plaintiffs' motions for class certification.[8]

---

[8]Chicago Title has also argued that class certification is not appropriate because of the great cost required to identify the class members (i.e., those persons overcharged for recording fees during the relevant time period) and the problems plaintiffs would face in proving the amount of class-wide damages. The Court does not agree that these problems could not possibly be overcome, and the Court therefore concludes that they do not provide an independent basis for denial of class certification at this time. The Court notes, however, that such problems would add to the other management difficulties discussed above.

In addition, given its denial of class certification on other grounds, the Court need not address Chicago Title's argument that plaintiffs have not satisfied the requirement under 28 U.S.C. § 1332(d)(2) that the amount in controversy exceed $5,000,000.

28

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motions for class certification (Doc. ## 33, 71) are **denied**.

IT IS SO ORDERED.

Dated this 6th day of December, 2007, in Kansas City, Kansas.

s/ John W. Lungstrum

John W. Lungstrum
United States District Judge